656 So.2d 643 (1995)
Charles Ray SANDERS, Bobbie O. Bickford, Individually, and as Administratrix of the Estate of Jesse Wayne Bickford and Tutrix of the Minor Children, Brian Wayne Bickford, and Travis Dan Bickford,
v.
ASHLAND OIL, INC., Asbestos Design Services, Inc., Alvin Fairburn & Associates, Inc., Alvin Fairburn, Sr. Asbestos Consulting Services, Inc., Protech Environmental Services, Inc., Aetna Life & Casualty, Inc., Roy Eschette, Air Monitoring Corporation, Daybrite Lighting, Inc., F.L. Industries, Inc., Regent Lighting, Inc., Abatement Technologies, Inc., Ribando Electrical Supply, IMR Corporation, Home Depot, Inc., State of Louisiana, and Southern University.
No. 94 CA 1469.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
Opinion Denying Rehearing June 21, 1995.
*645 Patrick Hufft, New Orleans, for plaintiff/second appellant-Charles Ray Sanders.
Aub Ward, Baton Rouge, for plaintiff/second appellant-Bobbie O. Bickford.
Henry Terhoeve, Baton Rouge, and Francis Touchet, Livingston, for defendants/first appellants-Roy Eschette, Protech Environmental Services, Inc., Aetna Life & Cas. Co.
Robert T. Meyers, New Orleans, for defendant/appellee-Agricultural Excess & Surplus Ins. Co.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting a motion for summary judgment.

FACTS
On or about October 3, 1990, Protech Environmental Services, Inc. (Protech) entered into a contract with the State of Louisiana to provide asbestos abatement services during the renovation of Grandison Dormitory on the campus of Southern University in Baton Rouge, Louisiana. On December 8, 1990, while the asbestos abatement services were being provided by two Protech employees, namely Charles Ray Sanders and Jesse *646 Wayne Bickford, a fire began at Grandison dormitory. As a result of the fire, Charles Ray Sanders sustained serious injuries, and Jesse Wayne Bickford was killed.
On December 6, 1991, petitioners[1] filed the instant suit for damages. Named in their petition were numerous defendants, including Protech, Roy Eschette, and Aetna Life & Casualty, Inc. (Aetna), liability insurer of Protech. Petitioners alleged that Eschette was at fault for failing to provide a safe place to work, requiring his employees to work under unsafe conditions, and committing an intentional tort upon Bickford and Sanders by requiring them to work under conditions which he knew were substantially certain to result in injury. Petitioners alleged that Protech was at fault for, among other things, committing an intentional tort upon Bickford and Sanders by requiring them to work under conditions which they knew were substantially certain to result in injury. Thereafter, petitioners amended their petition to name as an additional defendant, Agricultural Excess and Surplus Insurance Company (Agricultural Excess), general liability insurer of Protech. Numerous other pleadings were filed among the various parties, none of which are pertinent to the issues raised in this appeal.
On December 1, 1993, Agricultural Excess filed a motion for summary judgment, alleging that its policy did not afford coverage under the allegations of the petition. Attached to Agricultural Excess's motion was a copy of the general liability insurance policy and an affidavit by Roy Eschette. In support of its motion for summary judgment, Agricultural Excess alleged that the allegations of petitioners' petition show that Sanders and Bickford were employees of Protech and that the Agricultural Excess policy specifically excludes coverage for bodily injury to an employee arising out of his employment. Petitioners filed an opposition to the motion for summary judgment, attaching to their opposition the contract between Protech and the State for the work at Southern University. By judgment, dated February 9, 1994, the trial court granted Agricultural Excess's motion for summary judgment and dismissed petitioners' claims against Agricultural Excess as the insurer of Protech and Eschette.
From this adverse judgment, petitioners and defendants, Eschette, Protech, and Aetna appeal, assigning as error the trial court's granting of the motion for summary judgment.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La.1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear as to what the truth is and *647 excludes any real doubt as to the existence of material fact. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of the mover, while the papers of the party opposing the motion are to be treated indulgently. Ortego v. Ortego, 425 So.2d 1292, 1297 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La.1983).
Summary judgments are not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583. In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This is true even if grave doubt exists as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).

GENERAL LIABILITY INSURANCE COVERAGE
The issue before the court is whether the general liability policy issued by Agricultural Excess provided coverage for Protech and/or Eschette for the injuries sustained by Sanders and Bickford.
The general purpose of liability insurance is to afford the insured protection from damage claims. Breland v. Schilling, 550 So.2d 609, 610 (La.1989). An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Breland v. Schilling, 550 So.2d at 610. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. Smith v. Matthews, 611 So.2d at 1379; Franklin v. J.A. Jones Construction Co., 391 So.2d 1321, 1323 (La.App. 4th Cir. 1980). However, any ambiguous provisions in an insurance contract must be construed in favor of coverage to the insured and against the insurer who issued the policy. Smith v. Matthews, 611 So.2d at 1379; Breland v. Schilling, 550 So.2d at 610. See Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991). Moreover, exclusionary clauses in insurance contracts are strictly construed against the insurer. Garcia v. St. Bernard Parish School Board, 576 So.2d at 976. If the language of an exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Garcia v. St. Bernard Parish School Board, 576 So.2d at 976.

A. COVERAGE.
In determining whether the Agricultural Excess policy affords coverage to Protech and Eschette, we must examine the applicable policy provisions.
The general liability policy issued by Agricultural Excess to Protech was in effect between October 18, 1990, and October 18, 1991. The Agricultural Excess policy defines "insured" as "any person or organization qualifying as such under SECTION II WHO IS AN INSURED." Section II states, in pertinent part, as follows:
1. If you are designated in the Declarations as:
c. An organization other than a partnership or joint venture, you are an Insured. Your executive officers and directors are Insureds, but only *648 with respect to their duties as your officers or directors. Your stockholders are also Insureds, but only with respect to their liability as stockholders. (emphasis added.)
The policy common declarations list Pro-Tech Environmental Services, Inc. as the named insured. Because the named insured contained in the declarations is an organization, the executive officers and directors are also insureds under the policy. The petition filed by petitioners alleged that Sanders and Bickford were employees of Protech and were engaged in the course and scope of their employment at the time of the fire. Protech admitted such allegations in its answer to the petition.[2] The record is devoid of evidence to show that Eschette is not an executive officer or director of the corporation, who is entitled to status as an insured under the policy.[3] Therefore, under the clear terms of the policy, the Agricultural Excess policy affords coverage to both Protech and Eschette.
Section IV addresses the commercial general liability conditions of the policy and makes it clear that, subject to the limits of the policy, each insured has separate coverage as if each were separately insured with a distinct policy of insurance. Section IV, Subpart 7 provides that "[e]xcept with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured," the insurance applies:
a. as if each Named Insured were the only Named Insured; and
b. separately to each Insured against whom claim is made or "suit" is brought. (emphasis added.)
Therefore, under the clear wording of the Agricultural Excess insurance contract, subject to the limits of liability of $1,000,000.00, each insured, namely Protech and Eschette, is entitled to coverage under the policy. See Pullen v. Employers' Liability Assurance Corporation, 230 La. 867, 89 So.2d 373 (1956).

B. EXCLUSIONS.
Having determined that both Protech and Eschette are afforded coverage under the Agricultural Excess policy, we must determine whether there are any exclusions applicable.

1. Bodily Injury to Employees.
Section I A of the Agricultural Excess policy covers Bodily Injury and Property Damage liability, but excludes coverage for:
e. "Bodily injury" to:
(1) an employee of the Insured arising out of and in the course of employment by the Insured.
This exclusion applies to any obligation to share damages with or to repay someone else who must pay damages because of the injury and regardless of whether the insured may be liable as an employer or in any other capacity.
In its appellate brief, Agricultural Excess contends that the jurisprudence holds that only the named insured must be the employer in order for the exclusion to apply, citing Franklin v. J.A. Jones Construction Co., 391 So.2d at 1321, and Wainwright v. Moreno's, Inc., 602 So.2d 734 (La.App. 3rd Cir.1992).
In Franklin, the policy provided that insured persons included any employee of the named insured while acting within the course and scope of his duties as such, but that the insurance afforded to such employee did not apply to bodily injury to another employee of the named insured arising out of or in the course of his employment. The policy in Franklin also provided an exclusion for bodily injury to any employee of the insured arising out of the employment with the insured. The court interpreted these provisions as "cross-employee" exclusions and determined that coverage was excluded. In Wainwright, the comprehensive general liability policy contained a bodily injury to an *649 employee exclusion, and the court determined that, because the plaintiff was injured while in the course of his employment, the comprehensive general liability policy did not provide coverage. However, the court did not address the policy definitions regarding who was an insured under the policy within the context of the comprehensive general liability policy.[4]
In the instant case, a review of the entire record reveals that Sanders and Bickford were employees of the corporate entity known as Protech. The allegations of petitioners' petition clearly reveal that Sanders and Bickford were employed by Protech and were in the course and scope of their employment at the time of the incident. As such, under the clear provisions of Paragraph (e) of the policy exclusions, no coverage is afforded to Protech under the policy in that the bodily injuries resulted to an employee of Protech, an insured, which arose out of and in the course of their employment with Protech.
However, this exclusion is inapplicable to Eschette in that neither Sanders nor Bickford were employed by Eschette, personally, nor were they in the course of any employment with him at the time of their injuries.
Therefore, we find that the summary judgment with regard to Eschette was improvidently granted. The clear language of the policy does not exclude coverage for Eschette, personally, under the exclusion for bodily injury to an employee. Eschette, as opposed to Protech, was not the employer of Sanders and Bickford. With regard to the propriety of the granting of the summary judgment with regard to Protech (the employer of Sanders and Bickford), our inquiry does not end here.

2. Insured Contract.
Expressly exempted from the exclusion set forth in Paragraph (e) is liability assumed by the Insured under an "insured contract." An "insured contract" is defined in Section VDEFINITIONS of the Agricultural Excess policy as follows:
g. that part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage." Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.
Petitioners argue that, in the contract between Protech and the State, dated October 3, 1990, which was attached to the opposition to the motion for summary judgment, Protech obligated itself to fully indemnify and save the State harmless from all costs and damages. Petitioners reason that, because the liability of Protech arises out of an insured contract, the exclusion set forth in Paragraph (e) is inapplicable.
A careful reading of the contract, dated October 3, 1990, between the State and Protech reveals that, although the contract provides for indemnification, such agreement is in the context of a performance bond and not a contract of indemnification for liability. The contract provides, in pertinent part, as follows:
The condition of this performance and payment bond shall be that should the Contractor herein not perform the contract in accordance with the terms and conditions hereof, or should said contractor not fully indemnify and save harmless the Owner, from all cost and damages which he may suffer by said Contractor's non-performance or should said Contractor not pay all persons who have and fulfill obligations to perform labor and/or furnish materials in the prosecution of the work provided for herein, including by way of example workmen, laborers, mechanics, *650 and furnishers of materials, machinery, equipment and fixtures, then said Surety agrees and is bound to so perform the contract and make said payment(s). (emphasis added.)
We find that the trial court correctly granted the summary judgment with regard to Protech. As Sanders' and Bickford's employer, coverage for Protech is excluded when the bodily injury results to an employee while in the course and scope of his employment. Further, the exception to the exclusion for insured contracts is not applicable in that the contract between Protech and the State is not an "insured contract."

CONCLUSION
We have carefully reviewed the entire record in this matter and, for the reasons previously set forth, we find that the trial judge erred in granting the motion for summary judgment as to Eschette. That portion of the trial court judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with the views expressed herein. In all other respects, the judgment of the trial court is affirmed. Agricultural Excess and petitioners are cast equally for all costs.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

ON APPLICATION FOR REHEARING
PER CURIAM.
In its application for rehearing, Agricultural Excess contends that this court failed to consider its prior opinion in Vargas v. Daniell Battery Manufacturing Company, Inc., 93-2282 (La.App. 1st Cir. 12/29/94); 648 So.2d 1103. Agricultural Excess reasons that, because this court considered identical language in another case and determined that a summary judgment denying coverage was proper, we failed to fully consider the prior opinion in this case.
However, we note that, although the policy language in Vargas is identical, the issues presented to the court in Vargas and in the instant case are different. In Vargas, the parties did not argue that the policy afforded coverage to the executive officer separate and apart from the corporation or that the exclusion for bodily injury to an employee of the insured was inapplicable to the executive officer because he was not the employer. In the instant case, however, the parties expressly argued those issues.
Moreover, in its application for rehearing, Agricultural Excess also contends that an intentional act exclusion contained in the Agricultural Excess policy warrants a rehearing. In its trial court memorandum in support of its motion for summary judgment, Agricultural Excess did not argue the applicability of this policy exclusion. Instead, Agricultural Excess argued that because petitioners were employees of Protech on the date of the accident and were in the course and scope of their employment at the time of the accident, the exclusion set forth in Section IA(e)(1), regarding exclusion of bodily injury to an employee of the insured arising out of the employment by the insured, was applicable. Accordingly, the trial judge did not consider this issue and it is not properly before this court.
For these reasons, the application for rehearing filed by Agricultural Excess is denied.
NOTES
[1] Charles Ray Sanders and Bobbie O. Bickford, individually, and as administratrix of the Estate of Jesse Wayne Bickford and as tutrix of the minor children, Brian Wayne Bickford and Travis Dan Bickford, filed the instant suit as petitioners.
[2] In support of its motion for summary judgment, Agricultural Excess attached the affidavit of Eschette, which reveals that Eschette is the owner of Protech. However, although Eschette signed the affidavit, it is not notarized.
[3] In its brief to this court, Agricultural Excess notes that "Roy Eschette ("Eschette") was at all relevant times the President of Protech."
[4] The discussion relating to who was an insured in Wainwright v. Moreno's, Inc., 602 So.2d 734, 740 (La.App. 3rd Cir.1992), revolved around the terms of a worker's compensation and employer's liability insurance policy (WC/EL). Under the terms of the WC/EL, coverage was excluded for any obligation imposed by worker's compensation or for bodily injury intentionally caused or aggravated by an employer named in the declarations. The court determined that, because the named insureds were Moreno's and Calcasieu Mechanical, Inc., the bodily injury caused by an employee of an insured was not excluded.