# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 5, 2022

Lyle W. Cayce
Clerk

No. 21-30431

---

Devin Barrios

*Plaintiff*,

*versus*

River Ventures, L.L.C.,

*Defendant—Appellant*,

XL Specialty Insurance Company; Certain
Underwriters at Lloyd's London, Subscribing to Policy
Number 10145-2015,

*Intervenor Plaintiffs—Appellants*,

*versus*

Travelers Property Casualty Company of America,

*Intervenor Defendant—Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC Case No. 2:17-CV-585

---

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.

Per Curiam:*

This appeal concerns a maritime insurance coverage dispute. River Ventures, L.L.C. ("River Ventures") and its insurers, XL Specialty Insurance Company ("XL") and Certain Underwriters at Lloyd's London ("Lloyd's") (collectively, "River Ventures/XL"), assert that River Ventures is owed coverage as an additional insured under two policies issued by Travelers Property Casualty Company of America ("Travelers") to Centaur, L.L.C. ("Centaur") for a personal injury claim brought by Devin Barrios, a Centaur employee, against River Ventures. The district court granted summary judgment for Travelers, ruling that a Crew/Employee Exclusion precluded coverage. We affirm.

## I.

United Bulk Terminals Davant, L.L.C. ("UBT") hired Centaur, a marine and industrial construction company, to build a concrete containment wall around the edge of the dock at its facility on the east bank of the Mississippi River in Plaquemines Parish, Louisiana (the "dock project"). Previously, UBT had hired River Ventures, which owns and operates crew boats, to provide vessel services at the facility. During the dock project, Centaur's employees relied on River Ventures for crew boat services. To govern the dock project, UBT and Centaur entered into a Master Service Contract ("MSC"). River Ventures did not contract directly with Centaur, nor was it a signatory to the MSC; rather, River Ventures had a separate contract with UBT to provide crew boat services at its facility to a variety of workers and contractors.

Pursuant to section 5 of the MSC, Centaur purchased multiple insurance policies from Travelers, including a Protection and Indemnity

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

("P&I") Policy and an excess/umbrella Bumbershoot Policy. Section 5 of the MSC also required Centaur to add members of the "UBT Group" as "additional insureds" on the policies, "but only to the extent of the liabilities assumed by [Centaur] in this Agreement." The MSC defined "UBT Group" as, *inter alia*, "UBT and UBT's other contractors . . . and the insurers of each of the foregoing." River Ventures is a contractor of UBT and thus part of the "UBT Group." In section 6 of the MSC, Centaur agreed to indemnify members of the UBT Group for all claims brought by any person for personal or bodily injury of a member of the Contractor group (defined as Centaur and its subcontractors) regardless of cause or fault—even if the sole cause was the fault of the UBT Group.

The P&I Policy covered, *inter alia*, "[l]iability for loss of life of, or personal injury to, or illness of, any person," as well as related "[l]iability for hospital, medical, or other expenses," subject to exclusions. The key provision in this case is the P&I Policy's Crew/Employee Exclusion ("the Exclusion") which reads:

> Notwithstanding anything herein contained to the contrary, it is mutually understood and agreed that this Policy does not cover claims in respect to loss of life, bodily injury, personal injury or illness of any crew, seaman or other employee of the Assured regardless of whether they be employees of the Assured or any Additional Assured named in the Policy or endorsed thereto.

The P&I Policy states that Centaur is "the Assured," but nowhere does the Policy explicitly define "Additional Assured." In accord with the MSC, the UBT Group—which included River Ventures and its insurers—was added to the P&I Policy as an "additional insured."

The Bumbershoot Policy provides excess liability coverage. The Bumbershoot Policy names Centaur as the Insured, but also has an

"Additional Insureds" provision which states that excess coverage shall be provided "[i]n the event of Additional Insureds being added to any Policy listed in the Schedule of Underlying Insurances," which includes the P&I Policy, subject to certain conditions, including that coverage for Additional Insureds "shall apply only in excess of similar coverage provided for" in an underlying policy.

Devin Barrios, a Centaur employee working on the dock project, was seriously injured while moving equipment from the River Ventures vessel M/V TROOPER onto a work barge. While Barrios was disembarking the TROOPER, the vessel separated from the work barge, causing Barrios to fall into the river and a portable generator to fall into the water and strike his head. Barrios filed a maritime personal injury suit against River Ventures and Centaur. River Ventures filed a cross-claim against Centaur, seeking indemnity and insurance coverage pursuant to the MSC.[1] After a bench trial, River Ventures was found 100% liable for Barrios's injury, and Barrios was awarded $3.3 million in damages.

River Ventures compromised and satisfied the judgment, and filed a third-party complaint against Travelers seeking coverage under Travelers' P&I and Bumbershoot policies issued to Centaur. XL/Lloyd's filed a complaint-in-intervention, seeking reimbursement of defense and indemnity payments. The parties filed cross-motions for summary judgment, and the district court granted summary judgment for Travelers and dismissed River

---

[1] The district court initially granted summary judgment for Centaur on the cross-claim, ruling that the MSC was a non-maritime contract and that the relevant portions of the MSC were voided by the Louisiana Construction Anti-Indemnity Statute, LA. R.S. 9:2780.1. River Ventures appealed, and a prior panel of this court reversed and remanded, holding that the MSC was a maritime contract governed by federal maritime law. *Barrios v. Centaur, L.L.C.*, 942 F.3d 670 (5th Cir. 2019).

No. 21-30431

Ventures/XL's coverage claims with prejudice.[2] The district court ruled that the P&I Policy's Crew/Employee Exclusion was unambiguous and precluded coverage for injury to Barrios, an employee of Centaur, because the Exclusion applied to the injuries of "any crew, seaman or other employee of the Assured" and the Policy defined "the Assured" as "Centaur." The district court also ruled that the Bumbershoot Policy did not provide coverage because it was an excess policy and no underlying coverage existed. River Ventures/XL appealed.

## II.

"This court reviews de novo a district court's grant of summary judgment, applying the same standard as the district court." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (citing *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Maritime contracts are governed by federal maritime law. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986). However, "'in the absence of a specific and controlling federal rule,' the interpretation of marine insurance policies is 'to be determined by reference to appropriate state law.'" *Gabarick v. Laurin Mar. (Am.), Inc.*, 650 F.3d 545, 552 (5th Cir.

---

[2] River Ventures also filed a breach of contract cross-claim against Centaur, arguing that, if the Travelers' policies did not provide coverage, then Centaur breached its obligations under the MSC to procure insurance. The district court denied River Ventures' and Centaur's cross-motions for summary judgment on the breach of contract claim, finding that there were genuine disputes of material fact that precluded summary judgment. Pending resolution of the coverage claim that is the subject of this appeal, the district court stayed and administratively closed the case, leaving resolution of the breach of contract claim for a later date.

2011) (quoting *Albany Ins. Co. v. Kieu*, 927 F.2d 882, 886 (5th Cir. 1991)).  In this case, Louisiana law applies.

"Under Louisiana law, '[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003)).  "Interpretation of a contract is the determination of the common intent of the parties."  LA. CIV. CODE art. 2045.  "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  *Id.* art. 2046.  "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."  *Id.* art. 2049.  "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."  *Id.* art. 2050.  "Ambiguous policy provisions are generally construed against the insurer and in favor of coverage," but "only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations."  *Cadwallader*, 848 So. 2d at 580 (citing LA. CIV. CODE art. 2056).  "An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion."  *Id.*

### III.

On appeal, River Ventures/XL argues that the P&I Policy's Crew/Employee Exclusion only applies when the entity seeking coverage is the employer of the person who was injured, and thus does not apply in this

case because Centaur, not River Ventures, was Barrios's employer. In the alternative, River Ventures/XL argues that the Exclusion is ambiguous and therefore should be construed against Travelers and in favor of coverage. Travelers argues that the Exclusion unambiguously excludes coverage for personal injury to any employees, regardless of whether they were employed by Centaur or any Additional Assured. We agree with Travelers that the Exclusion applies.

The disputed language in the Exclusion is "any crew, seaman or other employee of the Assured regardless of whether they be employees of the Assured or any Additional Assured." River Ventures/XL argues that the Exclusion only makes sense if the initial use of "the Assured" is understood to reference the insured entity seeking coverage—in this case, River Ventures—with the ensuing "regardless-of" phrase serving to modify "the Assured" to mean either Centaur or an Additional Assured, such that the Exclusion applies only when the entity seeking coverage is the employer of the injured employee. By contrast, River Ventures/XL maintains that reading "the Assured" to mean "Centaur"—i.e. "any crew, seaman or other employee of [Centaur] regardless of whether they be employees of [Centaur] or any Additional Assured"—as the district court did, renders the ensuing phrase superfluous or redundant. River Ventures/XL argues that if the intent was to exclude coverage for injury to *all* employees, as Travelers argues, then it would have made more sense for the Exclusion to read "employee of the Assured or any Additional Assured," or simply "employee of *any* Assured." Instead, River Ventures/XL emphasizes the Exclusion's use of "the Assured" rather than "any Assured," and maintains that the use of the definite article "the" means that "the Assured" "encompasses the other insureds under the policy, but only to the extent they are seeking coverage as the employer of the injured worker[.]"

We do not think that the words of the Exclusion reasonably support River Ventures/XL's interpretation. Its citations to an insurance treatise and Louisiana appellate case law for support are also unavailing because those authorities pertain to different policy language than the language at issue here. *See* 2 Allan Windt, 3 Insurance Claims and Disputes § 11:14 (5th ed. 2007); *Sanders v. Ashland Oil, Inc.*, 656 So. 2d 643 (La. Ct. App. 1995); *Petrozziello v. Thermadyne Holdings Corp.*, 211 So. 3d 1199 (La. Ct. App. 2017). Additionally, while River Ventures/XL argues that its interpretation of the Exclusion is in harmony with the MSC's insurance coverage and indemnity provisions, our focus in this appeal is the language of the P&I Policy. The MSC does not control the interpretation of the policy, supplant its terms, or expand the scope of coverage provided.

Nor is the Exclusion ambiguous. River Ventures/XL is correct that the Exclusion could have been written more efficiently, and the Exclusion's use of "the Assured" is certainly awkward. As quoted earlier, "[a]n insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation[.]" *Cadwallader*, 848 So. 2d at 580.

We think that the Exclusion unambiguously precludes coverage for all employee claims, regardless of whether the entity seeking coverage is the employer of the injured employee. The phrase "regardless of whether they be employees of the Assured or any Additional Assured" broadens the scope of the Exclusion beyond precluding coverage only for personal injury to a Centaur employee or only when the entity seeking coverage is the employer of the person who was injured, and instead clearly shows an intent to preclude coverage for all employee injuries regardless of the identity of the covered employer. Therefore, the Exclusion applies to Barrios's claim against River Ventures. Further, because there is no coverage under the P&I Policy, there

No. 21-30431

is no excess liability coverage under the Bumbershoot Policy.  Thus, the district court correctly granted summary judgment to Travelers.

## IV.

For the foregoing reasons, the district court's grant of summary judgment to Travelers is AFFIRMED and the case is REMANDED for further proceedings consistent with this opinion.