600 So.2d 898 (1992)
FIRST MERCURY SYNDICATE, INC.
v.
NEW ORLEANS PRIVATE PATROL SERVICE, INC., Leonard Gurvich, Sr., Louis Gurvich, Jr., Helen June Lazard and William H. Gurvich.
No. 91-CA-1195.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1992.
Rehearing Denied July 15, 1992.
David L. Campbell, Joseph L. Spilman, III, Deutsch, Kerrigan & Stiles, New Orleans, for plaintiff/appellant.
Rutledge C. Clement, Jr., Phelps Dunbar, New Orleans, for defendants/appellees.
*899 Before KLEES, PLOTKIN and JONES, JJ.
JONES, Judge.
This is an appeal from a judgment of the trial court ordering the appellant, First Mercury Syndicate, Inc., (hereinafter First Mercury) to provide a defense and indemnity to New Orleans Private Patrol Service, Inc., Leonard Gurvich Sr., Louis Gurvich Jr., and Helen June Lazard, the appellees. The individually named appellees are officers of New Orleans Private Patrol Service, Inc., (hereinafter NOPPSI), a closely held family corporation which provides security guard services.
Our review of the petition forming the basis of this litigation and the insurance policy issued by First Mercury leads us to the inescapable conclusion that the policy in question does not provide coverage in this case. For this reason we reverse the trial court.

FACTS
The initial petition forming the basis for this litigation was filed by William Gurvich on December 29, 1989. William Gurvich, a former officer, director, and employee of NOPPSI, alleged that he was a minority shareholder in NOPPSI and that he held at least 25% of the stock of this closely held family corporation. Named as defendants in his petition were: NOPPSI, the closely held family corporation; Leonard S. Gurvich Sr., an officer and director of NOPPSI and owner of at least 25% of the stock of NOPPSI; Louis S. Gurvich Jr., an officer and director of NOPPSI and owner of at least 25% of the stock of NOPPSI; Helen June Gurvich Lazard, a director and owner of at least 25% of the stock of NOPPSI; and ABC Insurance Co., a foreign insurance company authorized to do business in Louisiana and the company that was allegedly the insurer of NOPPSI and its officers and directors. William Gurvich alleged that he was litigating various claims against the defendants in his individual capacity and in his capacity as a shareholder. As a shareholder, he alleged that he was litigating claims on behalf of NOPPSI and against NOPPSI.
William Gurvich alleged numerous causes of actions against the defendants and asserted that they were liable jointly and in solido for the damages which he and NOPPSI had allegedly suffered. His individual action was allegedly based upon breaches of fiduciary obligations, breaches of obligations of good faith performance, bad faith breach of contract, libel and slander, wrongful discharge, and unfair and deceptive practices. His shareholder derivative action was brought pursuant to the provisions of LA. C.C.P. arts. 611 and 593 et seq. This derivative action included actions based upon the intentional interference with corporate powers, breach of the fiduciary obligation of good faith performance, and breach of contract. His individual and derivative actions each included allegations of negligence, duress, intentional and negligent interference with contractual and business relations, intentional and negligent misrepresentation and other tortious acts. He specifically pled that a special relationship existed between he and the individually named defendants in that Leonard Gurvich Sr. and Helen June Lazard were his siblings and Louis Gurvich Jr. was his nephew. Despite these facts, he alleged that they had allowed their self-interests to override their fiduciary obligations to him and to NOPPSI and that they had consistently acted in a manner to benefit themselves without any consideration for his interest or the interest of NOPPSI. He sought injunctive relief and damages.
Shortly after receiving the petition of William Gurvich, Louis Gurvich, the vice-president and general counsel of NOPPSI, talked to a representative of First Mercury and inquired about coverage for this type of litigation. First Mercury denied coverage and subsequently instituted the current litigation against the appellees and William Gurvich seeking a declaratory judgment that the comprehensive general liability insurance policy which it had issued to NOPPSI did not afford coverage to either the plaintiff, William Gurvich, or the appellees. First Mercury filed a motion for *900 summary judgment attaching a copy of the insurance policy as evidence of the terms of the contract. Appellees also filed a motion for summary judgment. William Gurvich apparently did not file a motion for summary judgment. The trial court denied First Mercury's motion for summary judgment, granted the appellees' motion for summary judgment and ordered First Mercury to defend and indemnify the appellees. Additionally, the court ordered First Mercury to reimburse the appellees their defense costs and reasonable attorney's fees with interest, as well as any future reasonable fees and costs. From this judgment, First Mercury appealed.

DISCUSSION AND LAW
First Mercury denied coverage for several reasons. First, it argued that the policy which it issued to the appellees, like other comprehensive general liability insurance policies, is designed to insure against occurrences which cause injuries. The suit by William Gurvich, according to First Mercury, is nothing more than an action brought by a disgruntled and now minority shareholder of a closely held family corporation for his alleged wrongful discharge from the presidency of the corporation and his subsequent removal as a director and the concomitant elimination of his wages and certain of his fringe benefits associated with holding those positions. This discharge, according to First Mercury, was an intentional act by the NOPPSI defendants and cannot be considered accidents pursuant to the policy's definition of an occurrence.
The second exclusionary clause relied upon by First Mercury to deny coverage was the Employers Liability Exclusion endorsement, which excludes coverage for employment related claims.
Our reading of the insurance policy in its entirety leads us to conclude that the provisions of the policy do not require First Mercury to provide coverage in the instant case. For this reason, we pretermit any discussion of whether the definition of an occurrence or the Employers Liability Exclusion Clause precludes coverage in this case.
The insurance policy between the appellees and First Mercury is a contract. Consequently, the rules governing the interpretation of contracts apply. Lindsey v. Poole, 579 So.2d 1145 (La.App. 2 Cir.1991), writ denied 588 So.2d 100 (La.1991). La. C.C. art. 2045 mandates that the interpretation of a contract should be made in such a manner as to give effect to the common intent of the parties. Intent of the parties is to be determined in accordance with the ordinary and popular sense of the language and by construing the entire document in a reasonable and fair manner. Lindsey, supra at 1147. Also, see La.C.C. art. 2047. In determining the scope of an insurer's liability, we note that liability under a comprehensive liability policy is only as provided in the policy and attached endorsements. The parties to the policy are free to select the types of risks to be covered. Southwest Louisiana Hospital Association v. Hunt, 551 So.2d 818, 821 (La.App. 3d Cir. 1989).
The policy issued to the appellees and William Gurvich cannot be interpreted to provide coverage in the instant case wherein it is clear that no coverage for this type of situation was contemplated by any of the parties. The policy was actually issued to New Orleans Private Patrol and Gurvich Systems, a security guard business. The clear intent of the policy was to protect the owners and shareholders (the appellees and William Gurvich) from losses caused to third parties related to the conduct of their security guard business. The various endorsements to the policy clearly indicate that coverage is for the business. Various prices are quoted for armed and unarmed operations and various endorsements show that coverage was obtained from time to time to cover jobs at specific locations. While it is true that the policy contains general language indicating that it provides coverage to any executive officer, director or stockholder while he is acting within the scope of any duties related to the business, it does not provide coverage for the types of acts alleged in the petition. *901 The acts allegedly committed by the appellees in removing William Gurvich from the board and terminating his employment are not acts directly related to the conduct of their security guard business. Rather, they are acts related to the control of the corporation. Such acts are typically the kinds of acts that might be covered by a directors and officers insurance policy. However, this is not such a policy and we will not enlarge the scope of the insurance contract to require coverage where none was ever contemplated by the parties. See La.C.C. art. 2051.
Additionally, First Mercury is not required to provide coverage to the appellees in this matter wherein it appears that all parties to this litigation are insured under the same policy. Clearly the appellees are insured since the policy provides coverage for the officers and directors of NOPPSI. It is equally clear that William Gurvich is an insured since the policy also provides coverage for stockholders. At the time the policy was purchased, William Gurvich was the president and a director of NOPPSI. William Gurvich is not a third party as to NOPPSI or the appellees, and the policy which was purchased at the time he was the president was never intended to cover damages that arise because of an internal disagreement among members of a closely held family business such as NOPPSI. As a matter of law and policy, co-insured parties to a policy are barred from recovering under such policies. La. R.S. 22:6 defines the various kinds of insurance available in this state. This statute provides in relevant part that:
§ 6. Kinds of insurance
Insurance shall be classified and defined as follows:
* * * * * *
(4) Liability. Insurance against the liability of the insured for the death, injury or disability of an employee or other person, and insurance against the liability of the insured for damage to or destruction of another person's property. (emphasis added)
* * * * * *
This definitional section makes it clear that liability insurance does not protect an insured from damage caused to itself. The very nature of such policies dictate that situations such as the one currently before this court are not the type for which liability insurance policies were designed to cover. Liability policies are commonly known as third party policies, i.e. they are specifically designed to protect the insured from liability that it might incur as a result of damage caused to third parties. 1 ROWLAND H. YOUNG, THE LAW OF LIABILITY INSURANCE §§ 1.01 and 1.02 (1991) Also see the dicta in Southwest Louisiana Hosp. Assn. v. Hunt, supra at 821 and Lou-Con, Inc. V. Gulf Building Services, Inc. 287 So.2d 192, 206 (La.App. 4th Cir.1973). The basic purpose of the general liability policy issued by First Mercury is to protect the assets of the named insured, which in this case is NOPPSI. While it is true that any acts of the directors and officers would be covered by the policy if some injury occurred to a third party as a result of any actions committed by them in the conduct of their security business, the policy was not meant to protect these persons against the risks of damages incurred by one of their own as a result of an internal disagreement among themselves.
A ruling affirming the trial court's judgment requiring appellant to defend and indemnify the appellees would necessarily mean that appellant would also be required to defend and indemnify the original plaintiff William Gurvich as well. After all, he is a shareholder and would be covered by the same language that the appellees are relying upon. The insurer would end up being responsible for paying the entire costs for all parties to this litigation. Such a result would be absurd and was clearly never intended by any of the parties to the insurance contract issued by First Mercury to NOPPSI.
The appellees' reliance upon cases such as Finci V. American Casualty Co., 323 Md. 358, 593 A.2d 1069 (1991); Washington Public Utility v. Public Utility District No. 1, 112 Wash.2d 1, 771 P.2d 701 (1989) and National Union Fire Insurance *902 v. Continental Illinois Corporation, 666 F.Supp. 1180 (N.D.Ill.1987) for the proposition that suit by an insured is allowed is misplaced. These cases differ from the case at bar in that they involved directors' and officers' insurance policies. Such policies are in fact specifically designed to protect against the type of risk involved in the present litigation. However, the policy issued by the appellant, First Mercury, to the appellees was not a directors' and officers' policy. For this reason, the policy cannot be interpreted to provide coverage in this case.
These cases are also distinguishable from the present case in that it does not appear that allegations of self-dealing and other violations of the corporate charter by family members were made by the petitioners in those cases. William Gurvich specifically alleged that the individual defendants had engaged in acts that were illegal and that constituted self-dealing. Among the acts complained of were acts of paying themselves excessive compensation for performing little or no work, placing family members on the NOPPSI payroll when such members were not working for NOPPSI, raiding corporate funds and removing large sums of money from corporate accounts for the benefits of themselves, wrongfully and improperly enacting a resolution to indemnify themselves and using corporate funds to protect themselves against their own wrongful acts. These allegations, if proven, would constitute wrongful and harmful acts against NOPPSI. To allow the defendants to be indemnified for such acts would nullify the purpose of the shareholder derivative action brought by William Gurvich. Thus, it would violate public policy to allow indemnification for such wrongdoing on the part of the insured. An insurance policy which would allow such indemnification may be implicitly proscribed by La.R.S. 22:6(14) which indicates that various kinds of loss, damage, or liability may be the subject of insurance even if it is not defined in this section of the statutes "... if such insurance is not contrary to law or public policy."
For these reasons, the judgement of the trial court denying First Mercury's motion for summary judgment and granting the appellees motion for summary judgment is reversed. All costs of this appeal are to be paid by the appellees.
REVERSED.