WHIPPLE, J.
|2In this appeal, an insurance company challenges the trial court’s ruling, which found that the commercial general liability policy at issue provided coverage for the plaintiffs injuries. Plaintiff has answered the appeal, challenging issues of allocation of fault and quantum. For the following reasons, we amend and affirm.
FACTS AND PROCEDURAL HISTORY
Janet Sue Muller is a sole proprietor doing business as Sno-Mobile of Louisiana, a snow-party business.[1] Conducting a snow party entails creating snow from shaved ice, spreading the snow on a tarp with a rake or squeegee, and coordinating snow games. Normally, conducting a snow party is a two-person job, and Janet, her son and his wife, her daughter and her daughter’s husband, and her daughter-in-law’s mother and brother all assisted in conducting snow parties for Janet’s business. Janet’s husband, William Muller, periodically performed minor maintenance work on the ice-shaving machines, but he rarely assisted in actually conducting snow parties.
On December 24, 2005, Janet’s son and his wife were scheduled to conduct a snow party at an apartment complex in Baton Rouge. However, when her son informed Janet that he and his wife could not conduct the party, Janet asked her husband William to assist her with the party. William’s responsibilities at the party included positioning the truck and trailer with the ice-shaving equipment and shaving the ice into snow, while Janet was responsible for spreading the snow on the tarp. Janet was also trying to keep the children off the tarp until they had finished creating and spreading the snow.
|sWhen William began shaving the ice, he encountered a problem with the ice-shaving machine. Specifically, the belt connected to the top and bottom pulleys was squealing, thus requiring William to remove the protective guard or cover from the machine to tighten the belt. After tightening the belt, William started the machine again to test it, and when he was satisfied that the machine was again working properly, he resumed shaving the block ice into snow. However, after adjusting the belt, William failed to replace the protective cover over the pulley mechanism of the ice-shaving machine.
Meanwhile, Janet, who had not seen William remove the protective cover from *345 the machine and who was unaware that he had removed it, began walking toward the location where William was shaving ice in order to spread the snow he had shaved toward the middle of the tarp. However, as she approached the back of the truck where William was working, Janet slipped on the tarp and reached out to grab onto the truck to steady herself. Instead of grabbing onto the truck, Janet apparently reached beyond the side panel of the truck, and her right hand became entangled in the pulley or belt, which was no longer shielded by the guard or cover. As a result of the accident, Janet’s right small finger and ring or long finger were seriously injured, with the small finger being traumatically amputated at the base of the finger. Janet subsequently underwent numerous surgeries and now has permanent disability of her right hand.
On July 25, 2006, Janet filed suit against William, alleging that he was negligent in causing the accident, and Colony Insurance Company (“Colony”), alleging that it had issued an insurance policy insuring William from liability for his negligence herein. Thereafter, Colony and Janet filed cross-motions for partial summary judgment on the issue of insurance ^coverage, with Colony contending that the policy did not provide coverage to William for Janet’s injuries which were incurred within the course of operating Janet’s business and with Janet contending the Colony policy did provide coverage for William’s alleged negligent acts.
Following a hearing on the motions, the trial court rendered judgment, granting Janet’s motion for summary judgment and denying Colony’s motion. Although Colony filed a writ application with this court, seeking review of the trial court’s finding of coverage, this court denied the writ application on the basis that an adequate remedy existed on appeal after the rendition of final judgment on the merits.
Also, William filed an exception of no right of action in response to Janet’s suit against him, averring that because he is Janet’s husband, he was statutorily exempt from liability pursuant to LSA-R.S. 9:291, which provides that a wife cannot sue her husband in .tort for negligent injury while married. Thereafter, on joint motion of Janet and William, the trial court rendered judgment dismissing without prejudice Janet’s claims against William, while reserving her right to proceed against Colony. Accordingly, the matter ultimately proceeded to trial against Colony only.
Following a bench trial, the trial court found that William and Janet were both negligent in causing the accident and assessed 40% fault to William and 60% fault to Janet. The court further found that Janet had suffered $140,000.00 in general damages, in addition to past- medical expenses, all of which it found to be related to the accident, with those amounts to be reduced by Janet’s comparative fault. However, the court found that Janet had failed to prove her entitlement to any future medical expenses. Accordingly, the trial court entered judgment in favor of Janet and against Colony in the amounts of $56,000.00 (representing general Isdamages of $140,000.00 reduced by Janet’s percentage of fault) and $18,889.41 (representing $47,223.53 in medical expenses reduced by Janet’s percentage of fault).
Janet then filed a motion for new trial, contending that the trial court’s. finding that she was 60% at fault in causing the accident was not suppoi'ted by the evidence presented at trial. Following a hearing on the motion, the trial court rendered judgment granting the motion for new trial and reapportioning fault 50% to Janet and 50% to William. • Accordingly, *346 the judgment granting the motion for new trial awarded Janet $70,000.00 in general damages (representing a 50% percent reduction for her comparative fault) and $23,611.77 in past medical expenses (also representing a 50% percent reduction for her comparative fault).
From these judgments, Colony appeals, assigning as error the trial court’s finding that Colony’s policy provided coverage to William for his negligence in causing the injuries sustained by Janet, a named insured. Janet answered the appeal, contending that: (1) the trial court erred in casting her with any fault for the injuries she suffered; (2) the trial court erred in failing to award an adequate amount of general damages considering the nature and extent of her injuries; and (3) the trial court erred in failing to award Janet any sum for future medical expenses.
DISCUSSION

Coverage under the Colony Policy

(Colony’s Assignment of Error)
In its sole assignment of error, Colony challenges the trial court’s finding that the commercial general liability (CGL) policy issued by Colony provided coverage to William for his negligence in causing the injuries sustained by Janet, its named insured. An insurance contract or policy is a |ficonventional obligation that constitutes the law between the parties to the contract, the insured and the insurer. Grace v. Crespo, 2007-0397 (La.App. 1st Cir.9/19/07), 970 So.2d 1007, 1012, writ denied, 2007-2010 (La.12/7/07), 969 So.2d 636. The goal of judicial interpretation of a policy’s wording is to determine the intent of the contracting parties. See LSA-C.C. art. 2045; Grace, 970 So.2d at 1012. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. Sanders v. Ashland Oil, Inc., 94-1469 (La.App. 1st Cir.5/5/95), 656 So.2d 643, 647, writ denied, 95-1797 (La.11/3/95), 661 So.2d 1389. However, any ambiguous provisions in an insurance contract must be construed in favor of coverage to the insured and against the insurer who issued the policy. Moreover, exclusionary clauses in insurance contracts are strictly construed against the insurer. Sanders, 656 So.2d at 647.
Thus, in determining whether the Colony policy affords coverage to William for Janet’s injuries, we must examine the applicable policy provisions. Regarding coverage provided by the policy, Section I of the policy, entitled “Coverages,” provides, in pertinent part, as follows:
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies.
With regard to who is considered an insured under the policy, the Declarations page of the Colony commercial general liability policy designates the insured as Sue Muller d/b/a “Snomobile of Louisiana.” Additionally, section II of the Colony policy, entitled “Who is an Insured,” defines “insured,” in pertinent part, as follows:
1. If you are designated in the Declarations as:
|7a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner. [Emphasis added.]
With regard to whether William comes within the definition of an insured under subsection l.a. of Section II of the Colony *347 policy, we first note that Janet is designated as the insured on the Declarations page, and it also is undisputed that William is Janet’s spouse and was her spouse at the time of the accident in question. Moreover, the evidence presented at trial clearly establishes that the incident at issue arose out of the conduct of Janet’s business, Sno-Mobile of Louisiana. William was acting in the conduct of Janet’s business when he removed the guard or cover from the pulley mechanism of the ice-shaving machine in an effort to adjust the machine so he could create snow for the party. Accordingly, under subsection l.a. of Section II of the Colony policy, William qualifies as an insured.
Nonetheless, Colony argues that isolating this portion of the insurance contract to find that the Colony policy insured William for the losses suffered by Janet ignores not only the remainder of the provision defining an insured, but also the intent of the policy as a whole. Specifically, Colony asserts that William should not be afforded coverage because: (1) the true intent of the policy was to protect an insured from damages caused to third parties; and (2) he was a “volunteer worker” as defined by the policy.
Regarding the intent of the policy, Colony first asserts that CGL policies are designed to protect the insured from losses caused to third parties and are not designed to cover damages sustained by an insured as the result of negligence of another insured. Thus, Colony contends, a finding of coverage herein would pervert the true intent of the policy. In support of its | ^argument that CGL policies are not designed to cover an insured for his negligence in causing damages to another insured, Colony relies upon the Fourth Circuit case of First Mercury Syndicate, Inc. v. New Orleans Private Patrol Service, Inc., 600 So.2d 898 (La.App. 4th Cir.), writ denied, 608 So.2d 169 (La.1992). In First Mercury Syndicate, an insurer which is-súed a CGL policy to a closely held family corporation filed suit seeking a declaratory judgment that its CGL policy did not provide coverage in a separate suit filed by one of the minority shareholders. In that separate suit, a minority shareholder of the corporation sued the corporation and the other shareholders, alleging that he was wrongfully discharged as president and subsequently removed as director and that, as a result, he suffered a loss of wages and benefits. First Mercury Syndicate, Inc., 600 So.2d at 899-900.
In appealing the trial court’s finding that the CGL policy provided coverage, the CGL insurer argued: (1) that the discharge of the minority shareholder was an intentional act and, thus, not considered an “accident” pursuant to the policy’s definition of an “occurrence”; and (2) that the Employers Liability Exclusion endorsement, which excluded coverage for employment-related claims, also applied to preclude coverage in the suit by the former corporate president. First Mercury Syndicate, Inc., 600 So.2d at 900.
In reversing the trial court’s finding of coverage, the Fourth Circuit did not specifically adopt either of the arguments of the CGL insurer, but rather determined that its “reading of the insurance policy in its entirety” led to the conclusion that the CGL policy did not provide coverage. First Mercury Syndicate, Inc., 600 So.2d at 900. While not citing any specific provision of the policy, the court held that “[t]he clear intent of the policy was to protect the owners and shareholders ... from losses caused to third |9parties related to the conduct of their security guard business.” First Mercury Syndicate, Inc., 600 So.2d at 900. The court concluded that the acts allegedly committed by the other officers and shareholders in terminating the presi *348 dent’s employment and removing him from the board were not acts directly related to the conduct of - the corporation’s security guard business, but rather were acts related to the control of the corporation. First Mercury Syndicate, Inc., 600 So.2d at 901.
However, the Fourth Circuit then went further in its analysis and additionally concluded that the insurer was not required to provide coverage where all the parties to the litigation were insured under the same policy, holding that “[a]s a matter of law and policy, co-insured parties to a policy are barred from recovering- under such policies.” First Mercury Syndicate, Inc., 600 So.2d at 901. Thus, the appellate court concluded that the CGL policy did not provide coverage in the separate suit by one shareholder and former officer against the corporation and other shareholders and officers. First Mercury Syndicate, Inc., 600 So.2d at 901-902.
With regard to the Fourth Circuit’s conclusion in First Mercury Syndicate that the allegedly wrongful acts therein were not directly related to the conduct of the corporation’s business, we note that the facts of the instant case are readily distinguishable. As stated above, William was clearly acting in the conduct of Janet’s business when he removed the guard or cover from the pulley mechanism of the ice-shaving machine. Thus, First Mercury Syndicate is factually distinguishable from the instant case.
Moreover, to the extent that the Fourth Circuit’s opinion sets forth a blanket statement therein that “[a]s a matter of law and policy, co-insured parties to a policy are barred from recovering under such policies,” we disagree with and decline to follow this holding. Indeed, as succinctly |10noted by Professors McKenzie and Johnson in- analyzing the. First Mercury Syndicate case and the above-quoted statement therein: “This statement is clearly wrong. There is no statutory or jurisprudential bar that prevents an injured party, solely because he is also an insured, from recovering under a liability policy based upon the fault of another insured.” William Shelby McKenzie & H. Alston Johnson, III, Insurance Law and Practice, 15 La. Civ. Law Treatise § 182, pp. 492-493 (3d ed.2006). Professors McKenzie and Johnson further noted:
Numerous intrafamily claims under automobile and personal liability coverages involve liability claims by an insured. Instead of barring such claims, Louisiana law actually fosters them by depriving the insurer of the right to assert interspousal and intrafamily immunity and exempting such suits from the requirement that the insured be named as a party, in a direct action.
William Shelby McKenzie & H. Alston Johnson, III, Insurance Law and Practice, 15 La. Civ. Law Treatise § 182, at p. 493 n. 19. See e.g. Doughty v. Insured Lloyds Insurance Co., 576 So.2d 461 (La.1991), wherein a wife recovered damages for the death of her son from the CGL insurer which insured her husband’s business, even though the wife was also insured under the CGL policy as the spouse of the named insured.
While Colony acknowledges that the First Mercury case “may have overstated” the law in holding that co-insured parties to a policy are barred from recovering under such policies, Colony nonetheless argues that First Mercury was correct in its statement that-the clear intent of the CGL policy was to protect the insureds from damages caused to third parties, rather than to other insureds. However, the intent of the parties to an insurance policy as to the extent of coverage is determined from the particular language of the policy itself. Highlands Underwriters Insurance Company v. Foley, *349 96-1018 (La.App. 1st Cir.3/27/97), 691 So.2d 1336, 1340. The clear and | nunambiguous language of the CGL policy at issue herein provides coverage for the negligence of William, as the spouse of Janet, the named insured, for the conduct of Janet’s business, Sno-Mobile of Louisiana. There is nothing in the language of subsection 1(a) of Section II of the Colony policy, the subsection granting coverage to the spouse of the named insured, that limits such coverage where the damages are sustained by another insured under the policy.
Moreover, we note that Section IV of the policy addresses the commercial general liability conditions of the policy and makes it clear that, subject to the limits of the policy, each insured has separate coverage as if each were separately insured with a distinct policy of insurance. See Sanders, 656 So.2d at 648. Specifically, section IV, subpart 7, entitled “Separation of Insureds,” provides that “[e]xcept with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insurance, this insurance applies: ... as if each Named Insured were the only Named Insured; and ... Separately to each insured against whom claim is made or ‘suit’ is brought.” (Emphasis added). Therefore, under the clear wording of the Colony insurance contract, subject to the limits of liability, each insured, including William, as Janet’s spouse, with respect to the conduct of the snow party business, is entitled to coverage under the policy. See Sanders, 656 So.2d at 648. Thus, this provision further negates Colony’s argument that it was not the intent of the policy provide coverage to an insured for losses suffered by another insured.
Accordingly, we find no merit to Colony’s argument that CGL policies are designed only to protect the insured from losses caused to third parties and are not designed to cover damages sustained by an insured as the |, ¿result of negligence of another insured, and, accordingly, that a finding of, coverage ■ herein would pervert the true intent of the policy. The clear wording of the CGL policy at issue dictates a different result.
Turning to Colony’s second argument in support of its contention that coverage should not be afforded for William’s negligence, Colony assei'ts that because William was a “volunteer worker” as defined in .the policy, coverage for his negligence in injuring the named insured is precluded under the policy. The language upon which Colony relies for this contention is contained in subsection 2,a.(1)(a) of Section II, “Who is an Insured,” which provides as follows:
2. Each of the following is also an insured:
a. Your “volunteer workers” only while performing duties related to the conduct of your business, or your “employees”, other than either your “executive officers” (if you are an organization other than a partnership, joint venture or limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these “employees” or “volunteer workers” are insureds for:
(1) “Bodily injury” or “personal and advertising injury”:
(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-“employee” while in the course of his or her employment or performing duties related to the conduct of your business, or to your *350 other “volunteer workers” while performing duties related to the conduct of your business[.]
Pursuant to this policy language, the Colony policy also insures volunteer workers, but that coverage is restricted or limited in that it does not extend to bodily injury to the named insured. Colony asserts that this language of subsection 2.a. of Section II excludes coverage herein because Janet, the named insured, was injured by William, when he was acting as a | ls“volunteer worker” in the conduct of Janet’s business. However, we note at the outset that subsection 2. of Section II provides that “[e]ach of the following is also an insured” under the policy. It provides coverage, in addition to that coverage already provided in subsection l.a. of Section II, to certain individuals including volunteers, albeit more restricted or limited than the coverage afforded in subsection l.a. of Section II.
In the instant case, coverage for William’s negligence derives from subsection l.a. of Section II, as the spouse of the named insured in the conduct of the named insured’s business. The coverage afforded in subsection l.a. of Section II is not restricted or limited to exclude coverage for injury to the named insured, as is the coverage provided in subsection 2.a. Because coverage for William’s negligence is derived from his status as Janet’s spouse, it derives independently from his role as a volunteer worker. Consequently, coverage is afforded for William’s negligence pursuant to subsection l.a., and it is thus unnecessary to determine if William would “also” be an insured under subsection 2.a., which provides more limited coverage. Accordingly, we likewise find no merit to Colony’s argument that the CGL policy does not provide coverage for William’s negligence because he was acting as a volunteer worker. The trial court correctly determined that the CGL policy issued by Colony herein provides coverage for Janet’s injuries caused by William’s negligence in the conduct of the business of Sno-Mobile of Louisiana.

Fault of Janet

(Assignment of Error No. 1 in Answer to Appeal)
In her answer to the appeal, Janet challenges several findings by the trial court, including the trial court’s apportionment of fault. Specifically, she avers that the trial court erred in finding that she was comparatively 114negligent in causing her own injuries and, alternatively, in assigning her 50% fault.
To prove that a plaintiff is comparatively negligent, the defendant must prove that the plaintiff was contributorily negligent and that such negligence was a proximate cause of the resulting injury. Derouen v. Mallard Bay Drilling, LLC, 2000-1268 (La.App. 1st Cir.6/22/01), 808 So.2d 694, 704. Thus, in determining whether Janet .was comparatively negligent in causing her own injuries, the trial court had to determine whether she failed to act as a reasonably prudent person under the- circumstances, whether her conduct was a cause-in-fact of her injuries, and whether the risk of the injury she sustained was within the scope of protection afforded by the duty she breached. See Moory v. Allstate Insurance Company, 2004-0319 (LaApp. 1st Cir.2/11/05), 906 So.2d 474, 478, writ denied, 2005-0668 (La.4/29/05), 901 So.2d 1076.
In finding that Janet was comparatively negligent in causing her own injuries, the trial court found that Janet, as the owner of Sno-Mobile of Louisiana, had assigned her husband William to operate the ice-shaving machine and that Janet “was trying to do everything else” and was “somewhat in a hurry” when the accident *351 happened. Ultimately, the trial court concluded that although William was actively at fault in causing the accident, Janet, as the owner of the business, was the person responsible for ensuring that the ice-shaving machine was being operated safely, which it was not at the time of the accident. Accordingly, the trial court, on motion for new trial, assigned Janet 50% fault for her passive fault in failing to 11sensure that the ice-shaving equipment was operated safely.[2]
We find no manifest error in the trial court’s finding that Janet was also at fault in causing her own injuries. The record demonstrates that Janet was the sole proprietor of Sno-Mobile of Louisiana and that William was not involved in conducting, coordinating, or supervising the snow parties for Janet’s business. Indeed, except on rare occasions, William did not even attend the snow parties to assist Janet, and on the few occasions that he did attend, the only job he performed was shaving ice.
Janet, on the other hand, was involved in every aspect of her snow party business. Although she did not personally conduct every snow party for the business, when she did conduct a party, she took responsibility for coordinating with the customer regarding the placement of the tarp on which the ice is shaved, spreading the shaved ice over the tarp, supervising the children at the parties to ensure that they stay away from the truck, trailer, and ice-shaving machine, and conducting snow games with the children. It is clear from the record before us that Janet was responsible for conducting the party in a safe manner, and while she acknowledged that the ice-shaving machine can be dangerous and that operating the machine without the guard was unsafe, she further acknowledged that she did not oversee or supervise the operation of the machine at all. Janet further admitted that although she had approached the truck with the ice-shaving machine a number of times before the accident, she failed to observe that the guard had been removed because she was distracted and “completely” absorbed' in other things going on with the party. Considering the foregoing, we are unable to find manifest 11Berror in the trial court’s determination that Janet was also negligent in causing her own injuries.
Moreover, with regard to the trial court’s apportionment of 50% fault to Janet, in considering the factors set forth in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985), we cannot conclude that the trial court was manifestly erroneous in assessing 50% fault to Janet. See Duzon v. Stallworth, 2001-1187 (La.App. 1st Cir.12/11/02), 866 So.2d 837, 862, writs denied, 2003-0589, 2003-0605 (La.5/2/03), 842 So.2d 1101, 1110. Clearly, Janet’s conduct in slipping and attempting to grab onto the side of the truck resulted from mere inadvertence. However, while she was aware that the operation of the ice-shaving machine was dangerous, she made no attempt to monitor or oversee its operation during the party to ensure that it was being operated safely. While William’s actions in operating the ice-shaving machine without replacing the guard were perhaps more directly related to the accident, Janet’s failure to monitor the operation of the ice-shaving machine for safety created a substantial risk that someone could be seriously harmed by the exposed mechanisms *352 of the machine. Moreover, despite William’s experience with mechanical equipment, Janet was the person responsible for the overall safety of the event and the party with experience in conducting the snow parties. Thus, she was the party in a superior position to monitor the operations and demand that safety precautions be observed. - Moreover, from the record before us, it does not appear that there were any extenuating circumstances that required Janet to proceed in haste in retrieving a squeegee or rake to move the snow to the center of the tarp. Accordingly, we cannot conclude that the trial court’s assessment of 50% fault to Janet was manifestly erroneous.

117General Damages

(Assignment of Error No. 2 in Answer to Appeal)
In this assignment of error, Janet contends that the trial court abused its discretion in awarding her only $140,000.00 in general damages for her injuries. A plaintiff is entitled to recover for all damages necessary to compensate for the physical injuries suffered. Hymel v. HMO of Louisiana, Inc., 2006-0042 (La.App. 1st Cir.11/15/06), 951 So.2d 187, 204, writ denied, 2006-2938 (La.2/16/07), 949 So.2d 425. General damages are those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification or intellectual or physical enjoyment, or other losses of life or of lifestyle, which cannot really be measured definitively in terms of money. Hymel, 951 So.2d at 204-205.
The discretion vested in the trier of fact in awarding general damages is great, and even vast, such that an appellate court should rarely disturb such an award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993). cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The initial inquiry on appeal is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the much discretion of the trier of fact. Youn, 623 So.2d at 1260. Reasonable persons frequently disagree about the measure of damages in a pai'ticular case. Thus, it is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn, 623 So.2d at 1261.
|lsIn the instant case, Janet suffered a traumatic amputation of the right small finger at the base of the finger as well as injury to the right ring finger. She underwent surgery on the day of the accident, during which 15 procedures were performed on the two fingers. These procedures included debridement of the wounds, reattachment of the small finger, and implantation of fixation devices in both fingers. Janet initially remained hospitalized from December 24, 2005 until December 29, 2005. Despite efforts to reattach the right small finger, the tip of that finger did not survive. Thus, Janet had to undergo a second surgery on January 27, 2006, to amputate the tip of the right small finger.
On March 6, 2006, Janet underwent a third surgery to remove pins previously placed in the two fingers to facilitate healing of fractures and for debridement and a skin graft on the small finger. Thereafter, Janet, who is right-hand dominant, began developing problems with her left hand, such as numbness and tingling of the thumb and index finger. Her treating orthopedic surgeon diagnosed her condition as compression of the median nerve of the *353 wrist, i.e., the nerve inside the carpal tunnel, otherwise known as carpal tunnel syndrome. Notably, he attributed this diagnosis to overuse of the left hand due to the injury to Janet’s right hand. Janet also developed contractures of the tendons in the right hand, which resulted from the flexor tendon retracting into the palm with the amputation of the small finger. Because of these problems, Janet was forced to undergo a fourth surgery on August 28, 2006, to release the contractures in the right hand and for carpal tunnel release on the left hand.
Since her accident, Janet -has suffered from pain in the right hand, and because of the nerve damage caused by the accident and surgeries, Janet has also developed hypersensitivity in the right hand. During her medical | ^treatment, Janet underwent extensive physical therapy, which she described as very painful, to combat the cont-ractures and the hypersensitivity. Nonetheless, she still suffers from limited range of motion and hypersensitivity in the right hand. Additionally, Janet has limited strength in her hand. As a result of Janet’s permanent loss and disability, her treating orthopedic surgeon assigned Janet a 15% whole person impairment rating.
Because of the pain and hypersensitivity in the right pain, Janet constantly guards that hand and has difficulty using the hand. Operating any type of machinery that vibrates, such as an automobile or vacuum cleaner, causes Janet pain, and she is no longer able to play the piano, which she did for her church.
Considering the foregoing and the record as a whole, as well as the vast discretion accorded the trier of fact in awarding general damages, we cannot say that the trial court abused its discretion in awarding Janet $140,000.00 in general damages. While Janet’s injuries are clearly serious and her pain is ongoing and while the award is seemingly on the low side for such injuries, we are unable to say the award was abusively low, given the trial court’s vast discretion.
However, because we conclude for the reasons set forth below that the trial court erred in failing to award Janet the cost of future surgery for trigger finger release, we find merit to her claim that she is entitled to damages for future pain and suffering that she will experience in conjunction with that surgery. Considering the condition of Janet’s hand, especially her hypersensitivity issues, the pain she hás experienced' in recovering from past surgeries, and the record as a whole, we amend the general damages award on appeal to award an additional sum of $15,000.00 for future pain and suffering related to the future trigger finger release surgery.
| go Future Medical Expenses
(Assignment of Error No. 3 in Answer to Appeal)
Janet further contends that the trial court erred in failing to award her any sum for future medical expenses. She avers that she should have been awarded sums for future treatment for possible recurrence of a trigger finger and for any increase in post traumatic arthritis in her right hand.
Although future medical expenses are by nature speculative, like any other element of damage, they must be established to some degree of certainty. Daigle v. United States Fidelity and Guaranty Insurance Company, 94-0304 (La.App. 1st Cir.5/5/95), 655 So.2d 431, 440. An award for future medical expenses is justified if there is medical testimony that they are indicated and setting out their probable cost. Hymel, 951 So.2d at 206. In such a case, the court should *354 award all future medical expenses which the medical evidence establishes that the plaintiff, more probable than not, will be required to incur. An appellate court should not set aside an award for future medical expenses absent an abuse of the trier of fact’s discretion. Hymel, 951 So.2d at 206.
In the instant case, the trial court did not award Janet future medical expenses, finding that there was not enough certainty in her treating physician’s testimony about future treatment to support such an award. Based upon our review of the record, while we conclude that the trial court erred in failing to award Janet the cost of future surgery for trigger finger release, we cannot conclude that the trial court was manifestly erroneous in refusing to award any other sums for future medical expenses.
With regard to Janet’s need for future trigger finger release, her treating orthopedic surgeon testified that Janet had been subjected to injections in the thumb for trigger finger and that 70% of patients who have 12Ta trigger finger injected will experience a recurrence of the problem. When the problem recurs, surgery is recommended, and her orthopedic surgeon testified that the cost of this surgery is approximately $8,500.00. Given the testimony clearly establishing, more probably than not, that she will suffer a recurrence of this problem, we conclude that the trial court erred in failing to find that Janet had proved future medical expenses for this surgery in the amount of $8,500.00. Thus, we will amend the judgment accordingly.
However, with regard to future treatment for any increase in post traumatic arthritis in the right hand, we note that Janet’s orthopedic surgeon testified that the risk is about 3% per year for the rest of Janet’s life and that it was “possible” that Janet, who was 64 years old at the time of his testimony, would need arthritis-related surgery. Given this testimony, we find no error in the trial court’s refusal to award any sums for this possible future treatment.
CONCLUSION
For the above and foregoing reasons, the January 11, 2010 judgment of the trial court is amended to award Janet the additional sum of $4,250.00, representing $8,500.00 in future medical expenses reduced by Janet’s 50% fault and the additional sum of $15,000.00 in general damages for future pain and suffering related to the future trigger finger release surgery, also reduced by Janet’s 50% fault. In all other respects, the judgment is affirmed. Costs of this appeal are assessed against Colony Insurance Company.
AMENDED AND, AS AMENDED, AFFIRMED.
McCLENDON, J., concurs in part and dissents in part and assigns reasons.
McDONALD, J., concurs in part for reasons assigned by Judge McCLENDON and dissents as to the amount of the increase in general damage award.

. While the business name is listed as “Sno-mobile” of Louisiana in the petition, a check from an account bearing the name of the business lists the name as "Sno-Mobile" of Louisiana.

. As stated above, the trial court initially assigned Janet 60% fault following trial, on the basis'that Janet, as the owner of the business, had a duty to see that the party was conducted safely and that while Janet was acting in haste, she acted in haste due to circumstances created somewhat by her making.