MAX N. TOBIAS, JR., Judge.
11 Albert C. Burns, Jr. and his wife, Madelyn C. Hannan, (collectively hereinafter, “the Burnses”), appeal a judgment of the trial court granting the motion for summary judgment of Praetorian Specialty Insurance Company (“Praetorian”). For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.
The Burnses own property located at 3233 Canal Street in New Orleans. They alleged that their property, which housed an office on the bottom floor and a rental unit on the upper floor, sustained damages during Hurricane Katrina. They entered into a contract with Barbara Enterprises, Inc. (“BEI”) to repair the dam ages.[1]
The Burnses’ petition for damages alleged that BEI failed to perform the contractual work provided in a workmanlike manner and to complete several tasks outlined in the contract. They further stated that BEI’s actions “rendered the subject structure unusable and in danger of collapse.” Praetorian issued an insurance policy to BEI. The petition alleged that Praetorian is liable as the liability insurer of BEL
| .¿Praetorian filed a motion for summary judgment alleging that the insurance policy it issued did not cover the damages alleged. They contended that they issued a standard commercial general liability (“CGL”) policy that excludes coverage for poor and/or faulty workmanship. Specifically, Praetorian noted that Sections 2.k, 2.m, and 2.n excluded coverage for the damages alleged by the Burnses.
Section 2.k of the Praetorian insurance contract states that coverage is excluded for “ ‘[pjroperty damage’ to ‘your work’ arising out of it or any part of it.” Section 2.m states that coverage is excluded for:
“Property damage” to “impaired property” that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in “your product” or “your work”; or
(2) A delay or failure by you or any acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to “your product” or “your work” after it has been put to its intended use.
And Section 2.n provides that coverage is excluded for:
Damages claimed for any loss, cost of expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
(1) ‘Your product”;
(2) ‘Your work”; or
(3) “Impaired property”;
if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of known or suspected defect, deficiency, inadequacy, or dangerous condition in it.
| -¡Praetorian noted that the Burnses’ expert, Edmond H. Pepper (“Pepper”), testified that, other than having to repair *1167 and/or replace BEI’s poor and/or faulty workmanship, no additional damage was sustained to the property as a result of the work performed by BEI.
The Burnses opposed the motion for summary judgment, arguing that the faulty work of BEI on the foundation piers resulted in additional damage to the property. They asserted that the structure is in imminent danger of collapse and is unusable as a result of the BEI’s faulty work on the piers. The Burnses attached in opposition several depositions and Pepper’s affidavit dated after his deposition. They asserted that Pepper’s affidavit was executed after Pepper was presented with new additional evidence and finds that the work performed by BEI resulted in additional damage to the property.
After oral argument, the trial court granted the motion for summary judgment, dismissing the Burnses’ claims against Praetorian.
Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court’s consideration of whether the summary judgment is appropriate. Reynolds v. Select Props., Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183.
The Supreme Court said in Bonin v. Westport Ins. Corp., 05-0886, pp. 4-6 (La.5/17/06), 930 So.2d 906, 910-11:
Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties’ common intent. La. C.C. art. 2045. Words and phrases used in an insurance policy are |4to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer’s liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.
If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer’s obligation are strictly construed against the insurer. That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. [Internal case citation omitted.]
Liability under a CGL policy is only as provided in the policy and its attached endorsements. The parties are free to select the types of risks to be covered. First Mercury Syndicate, Inc. v. New Orleans Private Patrol Service, Inc., 600 So.2d 898, 900 (La.App. 4th Cir.1992). An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its *1168 provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Carrier v. Reliance Ins. Co., 99-2573, pp. 11-12 (La.4/11/00), 759 So.2d 37, 43.
|fiThe Burnses agree that remediation of faulty workmanship is not covered by the policy, and therefore if no other damage was suffered, no liability on the party of Praetorian exists.
Consistent jurisprudence interpreting commercial general liability policies holds that these exceptions [“work” and “product” exclusions] unambiguously exclude coverage for damage to the work or product itself or for repair or replacement of the insured’s defective work or product. This is based on the principle that general liability policies are not intended to serve as performance bonds.
McMath Const. Co., Inc. v. Dupuy, 03-1413, p. 7 (La.App. 1 Cir. 11/17/04), 897 So.2d 677, 682.
I.
In their first assignment of error, the Burnses assert that the trial court erred in granting summary judgment because they suffered damages other than repair or replacement of BEI’s faulty work. They allege that they suffered economic loss due to the loss of use of their property because the property was a viable income-producing property prior to the BEI’s faulty work. In support of their argument, they cite Stewart Interior Contractors, L.L.C. v. MetalPro Industries, L.L.C., 07-0251 (La.App. 4 Cir. 10/10/07), 969 So.2d 653.
In Stewart, a general contractor hired a subcontractor, Stewart Interior (“Stewart”), to install metal stud framing and sheetrock in connection with the construction of a building. Stewart in turn hired MetalPro to manufacture and supply the studs. Sometime after installation, Stewart learned that the studs did not meet specifications; the studs damaged the sheetrock, tape and joint compound, interi- or paint finishes, vinyl base boards, and carpet. MetalPro’s CGL insurer filed a motion for summary judgment, alleging that their policy excluded coverage for |fithe damage alleged by Stewart. This court determined that the work product exclusion applied to exclude coverage for any damages that were caused exclusively as a result of, or during the removal and repair of, the steel studs. Thus, we affirmed the granting of summary judgment on that issue in favor of the insurer.
However, this court went on to state:
[T]o the extent Stewart has alleged and can prove damages for loss of use, and property damages caused by the steel studs that were occasioned to property other than the steel studs and unrelated to their removal and/or repair, then the ‘impaired property1 exclusion does not apply to preclude coverage for these specific items of damages.
Id., p. 17, 969 So.2d at 665.
The Burnses argue that BEI’s actions destroyed the utility of the building as a commercial office and residential rental unit. Thus, they assert summary judgment should not have granted because they have a viable claim for damages for loss of use.
Contrariwise, Praetorian argues that the Burnses failed to submit any evidence beyond their self-serving allegations to support their claim of economic loss.
On a motion for summary judgment, once the mover negates a necessary element of the non-moving party’s claim, the burden then shifts to the non-moving party to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; the non-moving party is not allowed to rely on the allegations of its pleadings in opposition to a properly *1169 supported motion for summary judgment.
Sims-Gale v. Cox Communication of New Orleans, 04-0952, p. 4 (La.App. 4 Cir. 4/20/05), 905 So.2d 311, 813.
|7The Burnses bore the burden of proving economic loss. Here, the Burnses failed to submit any proof beyond a self-serving allegation that the property produced income.[2] This assignment of error is without merit.
II.
The Burnses’ second assignment of error asserts that genuine issues of material fact exist precluding summary judgment. They assert that a genuine issue involves the question of economic loss suffered because BEI’s work rendered the property unusable. However, the Burnses submitted no evidence to support their allegation that they have suffered economic loss.
Next, the Burnses assert that a genuine issue of fact exists as to whether the building suffered additional damage beyond repair and/or remediation of because of BEI’s faulty work product. Their opposition to the summary judgment noted that the policy contained several exclusions, but argued that the products-completed operations hazard[3] provision provides coverage for the damages alleged. Section 16 of the policy provides:
“Products-completed operations hazard”:
a. includes all ‘bodily injury’ and ‘property damage’ occurring away from premises you own or rent and arising out of ‘your product’ or ‘your work’ except:
(1) Products that are still in your physical possession; or
(2) Work that has not yet been completed or abandoned. However, ‘your work’ will be deemed completed at the earliest of the following times:
|s(a) When all of the work called for in your contract has been completed.
(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
The Burnses assert that they sustained property damage arising from BEI’s work other than replacement of the misaligned piers, and that BEI abandoned the project. Thus, they argue coverage is provided under the product-completed operations hazard provision. They assert that Praetorian’s argument that Pepper testified that the building sustained no additional damage beyond that required to repair BEI’s faulty work product was refuted by Mr. Pepper’s affidavit.
Pepper appeared for deposition on 16 August 2010. He signed an affidavit on 15 May 2011 that averred that he reviewed an inspection report performed by S.Z.S. Consultants, Inc. (“S.Z.S.”) prepared in' 2007, prior to BEI beginning any work on the structure. Based on the S.Z.S. report, he opined that the building was not level prior to BEI beginning repairs, but struc *1170 turally, the building was sound. He further opined “that once BEI completed its work on the foundations and placed the structure back on the piers, the building began its structural decline.” He next opined that the “misaligned piers undermined the structural stability of the building.” Further, he stated that the structural stability of the building was also damaged by BEI’s removing jacks and plywood and that BEI’s failure to (a) properly enclose the rear portion of the building after its demolition and (b) cover | ¡Roles made by removing the chimneys resulted in water intrusion and additional water damage to the interior of the building.
The Burnses had another expert, Donald Makofsky, who testified that as a result of work performed by BEI, the structure: “[fit’s racked, it’s bowed, it’s leaning, the walls are separating, there’s areas that are unlevel due to the — the floors are sagging, the walls are bowing out. It’s not like we’re talking about the bathroom. We’re talking about the whole thing, the whole building.”
Thus, we find that the Burnses produced sufficient factual support to establish that they will be able to meet their burden of proof at trial on the issue of the additional damages caused by BEI, other than the repairing/replacing of the faulty work itself.
III.
Accordingly, we affirm the judgment granting the motion for summary judgment filed by Praetorian as to the claim for economic loss; however, we reverse the judgment granting summary judgment filed by Praetorian as to the claims of no additional damage under the products-completed operations hazard provision. We remand for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.

. The signed contract is on a standard AIA Document Form A105-1993.

. It is readily apparent that at the time the Burnses and BEI entered into the contract, the structure was unoccupied and that no income was being produced by the property.

. "Products-completed operations hazard” is frequently referred to by its acronym, "PCOH."